ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Laguna Construction Company, Inc. ) | ASBCA No. 58569 |
| ) | |
| Under Contract No. FA8903-04-D-8690 ) | |

APPEARANCE FOR THE APPELLANT:           Carolyn Callaway, Esq.
                                          Carolyn Callaway, P.C.
                                          Albuquerque, NM

APPEARANCES FOR THE GOVERNMENT:        E. Michael Chiaparas, Esq.
                                          DCMA Chief Trial Attorney
                                        Gregory T. Allen, Esq.
                                          Trial Attorney
                                          Defense Contract Management Agency
                                          Manassas, VA

## OPINION BY ADMINISTRATIVE JUDGE DELMAN ON APPELLANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Laguna Construction Company, Inc. (Laguna, appellant, LCC), moves to dismiss this appeal for lack of jurisdiction, contending that the government's monetary claim was filed more than six years from the date the claim accrued, and therefore is barred under the Contract Disputes Act (CDA), 41 U.S.C. § 7103(a)(4)(A).[1]

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 21 November 2003, the Air Force Center for Environmental Excellence (government) awarded to appellant Contract No. FA8903-04-D-8690 for Worldwide Environmental Remediation and Construction (WERC) (R4, tab 1)[2]. Laguna received 16 task orders (TOs) under this contract to perform various items of construction work in Iraq.

---

[1] In response to appellant's motion to dismiss, the government conceded: "The Government Acknowledges Its Cost Reasonableness Claim...on TO [Task Order] 0002 was Untimely" (gov't opp'n at 9). Accordingly, we address herein the balance of the government's claim, under TOs 0006 and 0015.

[2] We cite to the Rule 4 file submitted under ASBCA No. 57977, as supplemented thereafter, which appeal was later consolidated with ASBCA Nos. 58324 and 58569 (SOF ¶ 13).

2. Under TO 0006, awarded to appellant on 25 June 2004, appellant was to renovate facilities at the An Numaniyah Training Base (R4, tab 4). Under this TO appellant awarded a subcontract to "Yacoub & Ramzi Snobar Company" (Snobar) for 11 Kv Distribution Loop and Transformers (app. reply, attach. 4 at 3). It also awarded a subcontract to "Al Huda Company" (AHC) to perform work on a range complex (*id.*, attach. 5 at 5). According to the government's claim, the Snobar and AHC subcontracts were not awarded based upon adequate competition, and appellant failed to document that these award prices were reasonable (*see* SOF ¶ 12).

3. During contract performance in 2005 appellant submitted vouchers for progress payments to the government on behalf of these subcontractors, which vouchers identified the progress payment requested and the awarded subcontract price (app. reply, attach. 4 at 6, attach. 5 at 6).

4. Under TO 0015, awarded to Laguna on 12 July 2005 (gov't opp'n, appx. 1), appellant was to construct *inter alia*, barracks and classroom buildings for the Baghdad Police College. "Sigma International Construction, LLC" (Sigma) was awarded a subcontract to construct the barracks (app. reply, attach. 1 at 7). "The New Millennium" (TNM) was awarded a subcontract to construct the classroom buildings (*id.*, at 10). According to the government's claim, the awarded subcontract prices – which significantly increased from those initially proposed by the subcontractors – were not based upon adequate competition. As for TNM, it received award for the classroom buildings but was not the lowest bidder for this work. According to the government's claim, appellant failed to justify award to TNM as other than the lowest bidder, and failed to document that the Sigma and TNM subcontract award prices were reasonable. (SOF ¶ 12)

5. The government was aware of Sigma's and TNM's original subcontract price proposals through appellant's original cost proposal (2nd supp. R4, tabs 45, 46), and was also aware of the proposed increases to these prices prior to their award (mot., attach. 2). The government was also aware of the subcontract prices ultimately awarded. As was the case with TO 0006, during performance in 2005, LCC requested progress payments from the government on behalf of the TO 0015 subcontractors for work performed, which included the amount of the progress payment requested and the subcontract price (app. reply, attach. 1 at 7, 10).

6. On 6 December 2005, the Defense Contract Audit Agency (DCAA) Iraq Branch Office issued Audit Report No. 2131-2006T17900001 to the DCAA Salt Lake Valley Branch Office, entitled "Audit Report on Laguna Construction Company's Subcontract Management System" under this contract. Insofar as pertinent, the report stated as follows:

2

[W]e reviewed Laguna Construction Company (LCC) subcontract management system and examined a sample of 32 LCC subcontracts totaling $147,701,411 under Prime Contract No. FA8903-04-D-8690 on Oct. 22, 2005. The purpose of the examination was to review the subcontract management system to verify policies and procedures are in place to assure compliance with FAR 52.216-7, Allowable Cost and Payment. We also reviewed LCC's procurement files to determine whether LCC complied with FAR 15.4, to justify sole source procurements, performance of an adequate cost or price analysis of the subcontractors to ensure negotiation of a fair and reasonable price, or award subcontracts competitively.

(R4, tab 8 at G-91) DCAA's report concluded, *inter alia*, as follows:

In our opinion the [Laguna] subcontract management system and related internal control policies and procedures are inadequate and cannot be relied upon to ensure subcontracts are awarded in accordance with FAR 15.4, Contract Pricing, or subcontract payments by LCC are in accordance with FAR 52.216.7, Allowable Cost and Payment.

(R4, tab 8 at G-93) Among the objectionable conditions found by DCAA under the contract were "**Condition 1:  No Price Analysis Determining Subcontract Costs were 'Fair and Reasonable,'**" and "**Condition 2:  No Justification Provided for Subcontractor Not the Lowest Bidder**" (*id.* at G-95-97).

7. By Audit Report No. 3231-2006J17900001, dated 9 February 2006, the DCAA Salt Lake Valley Branch Office forwarded the DCAA findings to the administrative contracting officer (ACO) in an audit report entitled: "Flash Report on Subcontractor Management System Deficiencies." DCAA found the following with respect to this contract:

- On subcontracts awarded without adequate price competition, LCC did not perform a price analysis to determine whether the costs are fair and reasonable.

- LCC did not document justification for awarding subcontracts to other than the lowest bidder in accordance with FAR 15.408.

(R4, tab 15 at G-145) The audit report also concluded as follows:

3

Subcontract costs comprise a significant portion of costs on Contract No. FA8903-04-D-8690.... Due to the deficiencies in the internal controls related to LCC's subcontract management system we believe a significant risk is present relative to allocability, allowability and reasonableness of subcontract costs billed to the U.S. Government. We believe this deficiency is serious enough to render the subcontract management system inadequate. Accordingly, we recommend the contracting officer require LCC to submit requests for Consent to Subcontracts in accordance with FAR Part 44.2.

(*Id.* at G-146) The DCAA report did not specifically cite to the subcontracts in issue here.

8. Approximately three years later, on 12 March 2009, the ACO sent a copy of the 9 February 2006 DCAA audit report to Laguna (R4, tab 22).

9. By letter to Laguna dated 1 May 2009, the ACO identified "on-going and significant LCC subcontract management system deficiencies. *These deficiencies were first detailed in DCAA Audit Report [No.] 3231-2006J17900001 dated February 9, 2006 (Encl) which at the time reviewed subcontract awards under FA8903-04-D-8690 (WERC)*." The ACO determined that it was appropriate to suspend or withhold 30% from LCC's interim billings under this contract, which represented the cost risk to the government for the deficiencies reported. (R4, tab 24) (Emphasis added)

10. DCAA submitted an audit report to the ACO by date of 27 October 2009, entitled "Report on Audit of Subcontract Award Control Activities within Purchasing System." Insofar as pertinent, DCAA found the following conditions:

- *inadequate policies, procedures, and practices covering subcontract cost or price analysis,*
- *inadequate documentation in subcontract procurement files,*

    ....

    *It should be noted the contractor has already been cited for these same deficiencies in Audit Report No. 3231-2006J17900001, dated February 6 [sic], 2006.*

(R4, tab 25 at G-214) (Emphasis added)

4

11. On 17 March 2011, more than five years after the 2005-2006 audit reports, DCAA issued to Laguna a "NOTICE OF CONTRACT COSTS SUSPENDED AND/OR DISAPPROVED," Notice No. 2011-003, which disapproved $2,089,799 under this contract, including amounts under the AHC and Snobar subcontracts under TO 0006, and amounts under the Sigma and TNM subcontracts under TO 0015. According to this DCAA Notice, these subcontract awards "had no evidence of competition and all failed to meet the test of fair and reasonable pricing" based upon a lack of support "in [LCC's] procurement files sufficient to demonstrate the Government paid a fair and reasonable price for the services subcontracted." (R4, tab 27 at G-233-34) The disapproved amount was increased to $2,383,370 by DCAA Notice No. 2011-003a, dated 4 August 2011 (R4, tab 33).

12. By letter to Laguna dated 17 December 2012, the ACO issued a final decision providing disposition of the costs disapproved by the DCAA under Form 1 Notice 2011-003a. Insofar as pertinent, the ACO determined *inter alia*, that with respect to the AHC and Snobar subcontracts under TO 0006, LCC's procurement files were insufficient to determine the reasonableness of the subcontract prices. With respect to TO 0015, the ACO determined *inter alia*, that appellant's procurement files failed to document the reasonableness of Sigma's and TNM's subcontract prices and also failed to document appellant's decision to award the construction of the classrooms to TNM, who was not the lowest bidder. The total government claim, including associated G&A, was $3,815,232.68. (2nd supp. R4, tab 49 at G-421-23)

13. Appellant appealed this decision on 22 February 2013, and the Board docketed the appeal as ASBCA No. 58569. The appeal was later consolidated with ASBCA Nos. 57977 and 58324. These latter appeals are not subject to this motion.

DECISION

Under the CDA, 41 U.S.C. § 7103(a)(4)(A), a contract claim, whether that of the contractor or the government, must be "submitted within 6 years after the accrual of the claim." We do not have jurisdiction over a claim that fails to meet this requirement. The government, as proponent of our jurisdiction here, bears the burden of proving the facts sufficient to support our jurisdiction. *Raytheon Missile Systems,* ASBCA No. 58011, 13 BCA ¶ 35,241.

The CDA does not define claim accrual, but the FAR does so. Effective 21 November, 2003, the date of the contract award, FAR 33.201 provided the following definition:

5

"Accrual of a claim" means the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, *were known or should have been known.* For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred. [Emphasis added]

In order to determine when the alleged liability was fixed for purposes of claim accrual, it is necessary to examine the legal basis of the claim. *Gray Personnel, Inc.,* ASBCA No. 54652, 06-2 BCA ¶ 33,378 at 165,475. The legal predicate of the government's claim here is appellant's failure to document the reasonableness of subcontract awards under this contract that were not based upon competition. The DCAA was fully aware of appellant's failure to document the reasonableness of subcontract awards under this contract that were not based upon competition by late 2005, and it documented its findings by audit reports dated 6 December 2005 and 9 February 2006, which latter report was issued to the ACO. That the DCAA did not single out these subcontracts by name in the audit reports is irrelevant. DCAA reviewed 32 subcontracts under the contract totaling $147,701,411 which presumably was a significantly large sample upon which to support its findings.

The government was also aware of its "injury" here, i.e., the subcontract prices awarded by appellant and paid by the government, as early as 2005. The ACO did not file this claim until 17 December 2012.

For purposes of claim accrual, we have stated that the "events fixing liability should have been known when they occurred unless they can be reasonably found to have been either concealed or 'inherently unknowable' at that time." *Raytheon,* 13 BCA ¶ 35,241 at 173,016. There is nothing of record suggesting that the Sigma, TNM, Snobar and AHC subcontract files under TOs 0006 and 0015 were concealed or inherently unknowable during DCAA's 2005 audit review of appellant's subcontracting practices under this contract. The "should have been known" test of claim accrual has a reasonableness component – it turns, objectively, upon what facts were reasonably knowable to the claimant. *Raytheon,* 13 BCA ¶ 35,241 at 173,016. Given the nature of the government's claim here, i.e., the inadequacy of appellant's subcontract files to support the reasonableness of these subcontract prices, we believe that all events fixing the alleged liability of the claim were reasonably knowable and should have been known by the government no later than 9 February 2006, when the DCAA report was submitted to the ACO.

Accordingly, we conclude the government's claim accrued no later than 9 February 2006. The final decision asserting a government claim was dated

17 December 2012. We conclude the government's claim was untimely and is barred under the CDA.[3]

## CONCLUSION

The government has conceded that its monetary claim under TO 0002 was barred under the CDA as untimely (*see* note 1). For reasons stated herein, we conclude that the government's monetary claim under TO 0006 and under TO 0015 are also barred under the CDA as untimely. Accordingly, the CO's decision dated 17 December 2012 is hereby deemed null and void.

The appeal is dismissed for lack of jurisdiction.

Dated: 29 May 2014

JACK DELMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

[3] Given that the government's claim of 17 December 2012 is barred based upon the date of claim accrual of 9 February 2006, we need not address whether the claim accrued even earlier, i.e., from 6 December 2005, the date of the first DCAA audit report.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58569, Appeal of Laguna Construction Company, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8